IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOHNATHAN LEE X SMITH, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:09cv00097 |
| | ) | |
| JEFFREY DILLMAN, et al., | ) | |
|     Defendants. | ) | |
| -------------------------------------------------- | ) | |
| JOHNATHAN LEE X SMITH, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:09cv00462 |
| | ) | |
| LAWRENCE WANG, et al., | ) | |
|     Defendants. | ) | |

## REPORT AND RECOMMENDATION

These consolidated cases are before the court on plaintiff Johnathan Lee X Smith's motions to proceed in forma pauperis. Smith, a Virginia inmate proceeding pro se, has filed at least three lawsuits which have been dismissed as frivolous, malicious, or for failure to state a claim.[1] As such, he is subject to the three-strike provision of 28 U.S.C. § 1915(g). Under this provision, Smith may not proceed without prepayment of filing fees unless he is in "imminent danger of serious physical injury."

In each of these consolidated cases, Smith alleges that defendants have acted with deliberate indifference to his serious medical needs. In Civil Action No. 7:09cv00097 ("097"), filed on March 26, 2009, Smith alleges that state correctional personnel failed to provide him with surgery to correct an inguinal hernia; failed to prescribe pain medication for his hernia; discontinued his vitamin B12 injections which had been prescribed by medical personnel at

---

[1] See Smith v. Mueller, No. 96-7602 (4th Cir. Jan. 29, 1997) (recognizing plaintiff as a three-striker under the PLRA); Smith v. Commonwealth of Virginia, No. 7:97cv00723 (W.D. Va. Dec. 17, 1997); Smith v. Ailstock, No. 3:96cv00339 (E.D. Va. Apr. 23, 1996); Smith v. Ailstock, No. 7:95cv00939 (W.D. Va. Aug. 28, 1995).

another correctional facility; and failed to assign him to a bottom bunk, thereby aggravating his back pain. In Civil Action No. 7:09cv00462 ("462"), filed on November 17, 2009, Smith alleges that state correctional personnel failed to inform him that he had tested positive for Hepatitis C; intentionally failed to provide adequate medical care for his Hepatitis C; unreasonably delayed medical treatment for his Hepatitis C; and intentionally failed to provide adequate medical care for acute edema.

Defendants denied that Smith has been under imminent danger of serious physical injury. By Order dated May 14, 2010, the court referred these cases to the undersigned Magistrate Judge for the purposes of conducting an evidentiary hearing on the issue of whether Smith was under imminent danger of serious physical injury at the time he filed these actions and whether he should be allowed to proceed in forma pauperis. See 28 U.S.C. § 1915(g). The evidentiary hearing was held on August 16, 2010, and the transcript was filed on January 4, 2011. At the evidentiary hearing, the court directed the defendants to produce copies of all of Smith's medical records and grievances related to medical issues while he was housed at Green Rock Correction Center ("Green Rock"), and these records have been received and docketed.

The evidence presented at the hearing and review of Smith's medical records conclusively establishes that Smith did not face an imminent danger of serious physical injury from defendants' treatment at the time that he filed these lawsuits or at any time while he was incarcerated at Green Rock.[2] As such, it is **RECOMMENDED** that Smith's motions to proceed in forma pauperis be **DENIED** and, inasmuch as Smith has not prepaid the filing fee, that these cases be **DISMISSED** pursuant to 28 U.S.C. § 1915(g).

Further, it is plain from this evidence that Smith cannot prevail on his Eighth Amendment medical claims and that his contentions fail to state a claim upon which relief may be granted.

---

[2] Smith was transferred to a correctional facility located in the Eastern District of Virginia in January, 2010.

As such, it is **RECOMMENDED** that, in the alternative to dismissing these cases under § 1915(g), these cases be **DISMISSED** pursuant to 28 U.S.C. § 1915A.

**I.**

A lengthy evidentiary hearing was conducted on August 16, 2010, at which Smith and a number of his health care providers testified. Smith expressed concerns over problems with his legs being swollen and painful, with the delay in getting his inguinal hernia repaired and of his concerns regarding testing positive for Hepatitis C.

Smith was transferred to Green Rock on January 30, 2009, and was seen thereafter by Dr. Lawrence Wang and staff nurses. Smith complains about delays in getting his inguinal hernia surgery performed and pain associated with such delays. Smith was scheduled for hernia surgery at the Medical College of Virginia ("MCV"), which was initially delayed for security reasons because Smith accidentally became aware of the date of his transfer to MCV ahead of time. Further, Smith needed to have his Hepatitis C evaluated at MCV to see if he was a good surgical candidate. Smith was seen at MCV by a specialist in August, 2009 and cleared for surgery. Smith's surgery was scheduled for September, 2009, but was cancelled again when he declined to stay in the medical unit the night before the surgical transfer. Smith's hernia was rescheduled again and was performed in early March, 2010.

Smith also complains that Dr. Wang did not treat his chronic Hepatitis C by doing a liver biopsy or antiviral therapy, and that he could suffer death and destruction of his organs as a result of not being treated. He also contends that he is in imminent danger of contracting H1N1 swine flu, and that because of his liver problems he could lose his life at any minute.

Smith also complains that he has suffered from edema (swelling) in his legs causing him pain. Smith stated that two nurses observed swelling in his legs in April and June 2009, but he

3

was not seen by Dr. Wang for that condition.  Smith testified at the August, 2010 hearing that his leg pain and swelling was unchanged since 2009 and that he now needs to use crutches.  Smith was transferred from Green Rock to Greensville Correctional Center ("Greensville") on January 21, 2010, and his leg pain and edema has been evaluated there by medical personnel.  As of the date of the hearing, such medical treatment was continuing, as Smith testified that he was taken for an x-ray at the medical department at the Greensville Correction Center on the morning of the hearing.

With regard to the allegations in Civil Action No. 462, Dr. Wang testified that Smith's diagnosis of Hepatitis C does not place him in any imminent danger of any serious physical injury.  Dr. Wang explained that Hepatitis C is a viral infection, and that patients who are asymptomatic, like Smith, can live with this condition for many years.  Dr. Wang testified that he performed liver enzyme tests on Smith on February 19, May 8, and June 11, 2009, all of which were within normal limits and showed that Smith's liver function was appropriate.   Dr. Wang explained that the risk associated with Hepatitis C is that in a certain percentage of patients, it can progress to cirrhosis of the liver in 20 to 30 years.  Dr. Wang explained that more than 80% of patients with viral Hepatitis C, like Smith, live with it and suffer no organ damage.  Dr. Wang said that he saw no evidence of any abnormal liver function, cirrhosis or organ damage in Smith while he was at Green Rock.  Dr. Wang referred Smith to the Hepatology Clinic at MCV to get a definitive diagnosis and to have his liver function checked out further.  Smith was seen at MCV on August 12, 2009, at which time no clinical signs of cirrhosis or advanced liver disease were found.  Dr. Wang again referred Smith to MCV on November 4, 2009, with the same result.  Dr. Wang explained that given these findings, he saw no need for antiviral therapy.  Dr. Wang explained that there were significant risks associated with antiviral therapy treatment, as such

treatment decreases white blood cell production reducing the body's ability to fend off other infections. Dr. Wang explained that this could be a problem for Smith, as he had been evaluated at MCV for a low white blood cell count. Dr. Wang also saw no need to conduct a liver biopsy on Smith as such a procedure carries with it risks of infection and bleeding. As to Smith's complaints of leg pain and edema, Dr. Wang testified that he saw Smith on February 19, 2009, at which time he treated Smith for complaints of electrolyte imbalance causing pain in his sternum, right knee and both feet and ordered lab tests. On July 6, 2009, Dr. Wang treated Smith for low back pain radiating to his knee and prescribed Naprosyn. Medical records from that date reflect that Dr. Wang prescribed pain mediations and vitamins. According to Dr. Wang, Smith never reported swelling in his legs to him, nor did Dr. Wang recall observing any edema. Dr. Wang testified that his examinations of Smith never indicated any acute edema that in his medical judgment constituted a serious medical condition. Dr. Wang did not believe that Smith's medical condition placed him in any imminent danger of serious physical injury while he was at Green Rock.

 Dr. Velmir A. Luketic next testified. Dr. Luketic is on the faculty at MCV, having treated patients with liver disease for the past 19 years. Dr. Luketic did his residency at the Mayo Clinic and is Board Certified in Internal Medicine and Gastroenterology, which includes Hepatology. Dr. Luketic participates as a consultant in an inmate clinic at MCV operated under the auspices of the Department of Corrections ("DOC"). As a consultant, Dr. Luketic explained that he saw patients referred by the DOC, which remained responsible for the overall medical management of the patients. Dr. Luketic saw Smith on August 12, 2009 at MCV for the purposes of clearing him for his inguinal hernia surgery. Dr. Luketic explained that Smith had a planned surgery, and it was discovered that he tested positive for Hepatitis C. The question

5

posed to Dr. Luketic was whether Smith's Hepatitis C and liver disease could affect the ability to perform surgery and administer anesthesia. Dr. Luketic explained that only a small percentage of patients with Hepatitis C progress to advanced liver disease. Dr. Luketic was interested in discovering whether Smith had any evidence of advanced liver disease. Dr. Luketic testified that ultrasound, CT scan, and MRI tests of Smith's liver showed no abnormalities and no evidence of advanced liver disease. Lab studies done at the time of Smith's August 12, 2009 visit showed normal liver enzymes and normal hepatic function, which indicated that the liver was not damaged. Dr. Luketic explained that patients, like Smith, who test positive for Hepatitis C, have a good short term prognosis over the next five years and that "nothing terrible will happen to the individual because of [his] hepatitis C infection during that period of time." Over the longer term, the concern is with scarring of the liver and progression to cirrhosis. The only way to determine if there is scarring is to do a liver biopsy. Because such a procedure could cause infection and bleeding, Dr. Luketic tends not to perform such a biopsy unless necessary. In Smith's case, Dr. Luketic believed that there was no need for a liver biopsy. As Dr. Luketic explained, the liver is supposed to do certain things – make proteins and get rid of bilirubin. These functions may be ascertained from lab studies, and all of Smith's were normal. Dr. Luketic saw no signs of significant liver disease and concluded that Smith could safely proceed with surgery. Dr. Luketic testified that he observed no clinical signs of cirrhosis when he examined Smith. Dr. Luketic believed that from the standpoint of the condition of Smith's liver, Smith would do well with the hernia surgery. Dr. Luketic saw Smith again on November 4, 2009. At that time, there were no definitive laboratory or physical findings suggesting that Smith had advanced liver disease, and Dr. Luketic saw no compelling need for antiviral therapy. Nor did Dr. Luketic believe Smith needed a liver biopsy. Dr. Luketic explained that this is a

progressive, and not an acute, disease. There simply was no need for Smith to have antiviral therapy or a liver biopsy.

With regard to the allegations in Civil Action No. 097, Carrie Mayes, Director of Nursing at Green Rock, testified that Smith's hernia surgery was first scheduled for February 19, 2009, but had to be rescheduled for security reasons since Smith found out the date and time of the surgery ahead of time. Thereafter, additional delays were encountered because Smith had to be cleared by hepatology and anesthesiology at MCV. Smith was cleared for surgery in August 2009, and surgery was scheduled for September 29, 2009 at MCV. Prison procedures require that an inmate scheduled for surgery spend the night before his transfer in the medical observation unit to make sure that he does not take anything by mouth and to prevent inmates from calling persons outside the prison and telling them when they would be transferred. Smith refused to do so, stating that it was too cold in the medical unit and that he would not stay there. As a result of Smith's refusal, his scheduled hernia surgery had to be cancelled. Later, Smith wrote Mayes and stated that he agreed to stay in medical observation, so his surgery was rescheduled for January 28, 2010. Before the surgery could be performed, Smith was transferred from Green Rock to Greensville. Smith's transfer medical records noted the upcoming surgery, which was performed in early March, 2010. Nurse Mayes testified that she did not believe that Smith was in any imminent danger of serious physical injuries caused by the delays in the hernia surgery.

With regard to Smith's hernia, Dr. Wang testified that Smith was given a hernia belt and efforts were made to schedule Smith for surgery. As explained by Dr. Wang, an inguinal hernia was a defect in the abdominal wall, causing an internal organ to protrude through the defect. Dr. Wang explained that surgical repair of a hernia is elective unless the intestine becomes

7

strangulated. Intestinal strangulation is a serious condition, but Smith never presented any indication of strangulation. Smith testified that the condition of his hernia worsened in December, 2009. Review of the medical records reveals that Smith complained of pain from the hernia on December 25, 2009. The nursing note from that day states that the hernia was reducible. Dr. Wang testified that a reducible hernia is one in which the intestinal protrusion could be pushed back into the abdominal cavity. Dr. Wang saw Smith on December 28, 2009 and noted that Smith had a 7-8 cm. reducible direct hernia. Dr. Wang's note from that day makes reference to a referral for general surgery at MCV, a hernia belt and pain medications. On January 13, 2010, Smith complained that the hernia belt was not holding in his hernia. The nurse checked with the doctor who indicated he would see about getting the surgery rescheduled. Six days later, on January 19, 2010, Dr. Wang again saw Smith for his hernia, at which time Smith complained of pain and said that the hernia belt was not working. Dr. Wang's note reflects that Smith was in no acute distress and that there was no change in his hernia. Dr. Wang noted that Smith had another surgery appointment, but added a new pain medication, Tramadol, on a short term basis. Smith was transferred from Green Rock the next day, and his hernia was repaired at MCV in early March, 2010.

 Dr. Wang testified about multiple lab tests he performed on Smith in an effort to address his various maladies, including a vitamin deficiency. None of the lab tests indicated a deficiency causing any imminent danger of serious physical injury. Nevertheless, vitamins were prescribed for Smith. Dr. Wang testified that any time Smith complained of pain, he prescribed pain medications for him. Dr. Wang also ordered that Smith be allowed to have a lower bunk. Dr. Wang noted further that Smith asked for a lung biopsy, but that he did not present any medical reason for such a procedure.

The undersigned's review of Smith's medical records confirms that Smith was not in imminent danger of serious physical injury while he was incarcerated at Green Rock. Further, these records establish that Smith's medical needs were not the subject of deliberate indifference while he was housed at Green Rock. Smith was at Green Rock for nearly a year, from January 30, 2009 to January 20, 2010. During that span, Smith's Green Rock treatment notes number eighteen pages, and contain entries on more than fifty separate days. There are multiple entries for each month Smith was incarcerated at Green Rock. The notes reflect the efforts of the Green Rock medical staff to address his myriad complaints, including assessment of his Hepatitis C, inguinal hernia and many other issues. The medical records recount the variety of lab tests undertaken, as well as medications and other treatment prescribed. Not only was Smith seen at Green Rock, Smith's condition was evaluated by medical personnel at MCV, either by in-person visits or via the TelePACE video link. The medical records support the testimony of Drs. Wang and Luketic and Nurse Mayes regarding the medical care provided Smith. Rather than reflect deliberate indifference, these medical records demonstrate that the medical staff at Green Rock were attentive to Smith's medical issues. There is no suggestion in the medical records of any imminent danger of serious physical injury facing Smith from his various ailments while he was housed at Green Rock.

To meet the requirement of an imminent danger under 28 U.S.C. § 1915(g), the threat or prison condition must be real and proximate, and the danger of serious physical injury must exist at the time the plaintiff prisoner's complaint is filed or presented for filing. Smith must provide "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury." Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003); Johnson v. Warner, 200 F. App'x 270 (4th Cir. 2006). The term

"imminent" conveys the idea of immediacy. "Imminent" is "Near at hand … impending; on the point of happening, threatening, menacing, perilous. Something which is threatening to happen at once, something close at hand, something to happen upon the instant … and on the point of happening." Black's Law Dictionary, 514-15 (6th ed. 1991); <u>Percival v. Gerth</u>, No. 2:10cv109, 2010 U.S. Dist. Lexis 121503, 5-6 (W.D. Mich. Nov. 17, 2010). Based on the medical records and the evidence presented at the evidentiary hearing, it is clear that Smith was not in imminent danger of serious physical injury resulting from the alleged failure of the Green Rock defendants to provide him with adequate medical care at any time during his stay there.

The undisputed medical evidence established was that Smith's inguinal hernia posed no imminent danger of serious physical injury. Smith was twice scheduled for surgery to repair his surgery at MCV during the year he was incarcerated at Green Rock, but both surgeries had to be rescheduled, the first time because Smith became aware of the date of his transfer out of the correctional facility for surgery, posing a security risk; and second because of Smith's refusal to stay overnight in the medical observation unit. Ultimately, Smith agreed to abide by prison procedure and he was rescheduled for hernia surgery which occurred shortly after his transfer from Green Rock. Likewise, the undisputed medical evidence from both Drs. Wang and Luketic was that Smith's Hepatitis C posed no imminent danger of serious physical injury. Each doctor testified that the health risk posed by Hepatitis C was of long term, progressive damage to the liver. Dr. Luketic, a hepatology specialist at MCV, testified as to the multiple clinical tests performed on Smith which conclusively established that Smith was in no acute danger and that nothing adverse would happen to him from this condition in at least the next five years. The record establishes consistent efforts to monitor and assess Smith's condition, and both Drs. Wang and Luketic testified that there was no medical reason to perform more aggressive

antiviral or liver biopsy procedures on Smith. Indeed, each doctor stated that such procedures carried medical risks of infection and internal bleeding, and were contraindicated in a patient such as Smith. There is no merit to Smith's complaint that because he was provided vitamin tablets, instead of an injection which was prescribed at another facility, he was placed at risk of any imminent danger. Smith was prescribed pain medications for his back pain, and the record establishes that Smith was medically approved for a lower bunk one week after he filed a grievance requesting the same. As to Smith's lower leg edema, Dr. Wang testified that leg edema poses no imminent danger of serious physical injury. A handwritten MCV Ambulatory Care Clinic Record contained in Smith's medical records dated after August 12, 2009 reflects that Smith reported that his chronic bilateral leg pain was controlled on Naprosyn. Dr. Luketic testified that medical records from Smith's physical examination on November 4, 2009 noted that Smith was in no acute distress and had no lower leg edema. Further, Dr. Luketic testified that the imaging studies of Smith's liver did not show any changes associated with advanced liver disease. In short, the medical evidence completely fails to support Smith's allegation that he was in imminent danger of serious physical injury during the year he was housed at Green Rock.

Accordingly, the undersigned **RECOMMENDS** that Smith's motions to proceed <u>in forma pauperis</u> be **DENIED**, and that because Smith has not prepaid the filing fee, that these actions be **DISMISSED** pursuant to 28 U.S.C. § 1915(g).

## II.

Furthermore, even if this case were to proceed, the undersigned finds that Smith's claims nevertheless fail to state a claim of constitutional magnitude and, therefore, recommends that this

case be dismissed pursuant to 28 U.S.C. § 1915A.[3] In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to demonstrate that the defendant had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). A claim regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. Estelle, 429 U.S. at 105-06; Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Moreover, claims of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975).

Based on the pleadings, the evidence presented at the evidentiary hearing, and Smith's medical records, the undersigned finds that Smith has not demonstrated that the defendants were deliberately indifferent to any serious medical need. Even assuming that Smith's medical needs are sufficiently serious, the evidence, including the testimony and medical records, shows that the defendants did not disregard any of Smith's medical needs. To the contrary, the evidence demonstrates that the defendants routinely monitored, evaluated, and treated, where necessary, Smith's medical needs throughout the entire year that he was at Green Rock. To the extent Smith disagrees with the doctors and medical personnel over his course of treatment for his various ailments, such a claim is not actionable under the Eighth Amendment. Accordingly, the undersigned finds that Smith has failed to state a claim and, therefore, **RECOMMENDS** that these actions be **DISMISSED** pursuant to § 1915A.

---

[3] The undersigned also notes that if in forma pauperis status were granted in this case, the court could also dismiss Smith's complaint pursuant to § 1915(e)(2).

**III.**

The Clerk is directed to transmit the record in this case to Honorable Samuel G. Wilson, United States District Judge. Plaintiff is reminded that pursuant to Rule 72(b), he is entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is directed to send a certified copy of this Report and Recommendation to plaintiff.

Entered: January 10, 2011.

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States Magistrate Judge